Good morning, your honors, opposing counsel. I represent the opponent in this case, Doreeb Shiba, and my name is John O'Toole. Doreeb Shiba, for the court's information, is a patriot in this country, a man who honorably served in the military and was discharged honorably. Only reason I mention that, your honors, is I believe having served in such a capacity, he believes he brings to the table a lot of credibility that some other folks in our society do not have. Two primary issues in this case have to do with discrimination. The Rehabilitation Act of 1973, which is analyzed under the Americans with Disabilities Act in a hostile work environment. One of the sub-issues in this case, as alleged by the defendant, is whether Mr. Shiba exhausted his administrative remedies. There is a 45 window involved, which he clearly violated. That being said, there are exceptions to that rule, and the exception to this rule that the court served dates are important. Mr. Shiba was terminated on June 6, 2010. However, the Merit Selection Protection Board overturned that decision. Order was effective 2015-2010, and he was ordered to be reinstated to his current position. He then served with the USCIS for approximately two months before he again went on disability. On September 27, 2011, he was referred to the Office of the Inspector General, or the OIG. The Office of the Inspector General issued his report on 3-15-2014, and Mr. Shiba was terminated officially August 25, 2014. As cited in my brief, the Cleveland case decision by the U.S. Supreme Court, and this involved a lady who was working at the company. She suffered a stroke. She went on disability, and was fired thereafter. The court said that even though she may be in violation and indicate one of the elements, as long as she has a sufficient explanation that she would fall within the timing of the statute. I submit to the court that this is what happened here. Mr. Shiba, in his deposition testimony, and as referenced in my brief, brought up the fact that had he been allowed and given reasonable accommodations, he would have been able to work. This is in connection. Don't you have a qualified individual problem here? Because that's not what he said when he applied for disability benefits. He said he couldn't work. Even with the accommodations that his doctors were suggesting, he still couldn't work. And he had pressured his doctors to clear him for work. I think that's a problem. He says in his deposition, your honor, if it's okay if I quote it. Yeah, yeah, go ahead. There's no doubt in his deposition he contradicts his statement. That's correct. But he doesn't explain it. A contradiction just, you know, you can't make a sworn statement and then later deny it. And so we accept the deposition testimony. I think it's important because it brings up the reason why he wasn't able to work and it was because he wasn't receiving accommodations. I understand what the honor is saying that he is apparently contradicting himself. But he he said so because I really think it depends on how the question is asked. And so if I could just quote a couple stances here, your honor, I think it'll be clear. So the question poses, so which is it? Were you better and you could return to work or were you never better? And answer, I was, I was better during this time. And then because of the issues occurred, I got worse again. And I was worse again. Question. So your condition improved. You were able to return to work when I was accommodated. And he thought that as long as you had your accommodation, you'd be able to work. Correct. So I think what he's saying here is long as he has accommodations, he can work regardless of what the doctors say. If he's given accommodations, which were identified by Dr. Curran previously, that he would be able to work. And those accommodations were pretty straightforward. One, but I think, but I think in his statement, the problem is in his sworn statement, what he says is that he pressured the doctors into saying he could work with accommodations when he couldn't. So in other words, his statement, I understand, I know what the deposition testimony says, and you're exactly right. He quoted perfectly right. But in his statement, he says the opposite. And in the declaration, he just contradicts what he says in his statement. He never explains. He just says something different. I don't think he was asked for further explanation. I think he would have provided it if he'd been asked. The problem is he's saying one thing to the, for workers' compensation benefits and something else to his employer about returning to work with accommodations. That's the problem. He said he was completely disabled for, and could not work for workers' compensation. But then saying he can work with accommodations when he wanted to come back. And that's the basis of his rehabilitation. That's correct, Judge. And that goes to the issue of judicial estoppel as raised by the trial court judge. Right. That's the contradiction is that he can't, you know, he can't tell one agency that he can't work in order to collect government benefits and then tell his employer, a government agency, that he can work with accommodations and then turn around and sue when he's fired after seven years on medical leave. I think he was only back for two months. That's true. When he had, when he suffered another injury. So he was employed by this agency for seven years without working more than two months. Well, I think the operative time. It's hard to argue that he was a qualified individual. Well, he could be accommodated and perform the essential tasks of the job when he was off on medical leave for seven years and only worked for two months. I think the operative time period is after the point he was reinstated by the Merit System Promotion Board. I think what happened prior to that is irrelevant. I think when he's, there's no mention any place that other than his medical condition, he was not qualified for the position. There's no mention of it whatsoever. So assuming that's the only issue involved, I think the salient question for the court is, did the government fall down and not providing the reasonable accommodations he requested? You alluded earlier at the opening, Mr. O'Toole, to the timing problem your client has. He complained to the Equal Opportunity Office, if I'm right, in October of 2014 about events that were an alleged failure to accommodate back in 2010 or 2011. So he's outside of the 45-day window. That's correct. And you say, well, there's a continuing violation, but are you, I don't know what you're relying upon there. Do you have to get into the whole business about the immigration matter that he raised with the United Nations? I think that's relevant because that's what... I don't know how that has anything to do with a failure to provide him with hourly stretch breaks. My, I think that's relevant because I think that's a manifestation of the government's intent to get rid of him. The OIG investigation, which occurred starting in 2011, he was terminated in 2011 as well. He was terminated in January of 2011. The government launched this OIG when he was out on medical leave in September of 2011. He had also testified in his deposition during the time he was on medical leave, which was after December 22nd or from January 10th, 2011. Yeah. I don't see any, what is the connection in your client's mind between the investigation involving the UN and the failure to provide hourly stretch breaks to accommodate the injury he suffered when he fell in the bathroom? I don't understand. I don't see any connection at all. I think he was... I think the connection there is that it's an example that the government used in order to terminate him because they couldn't terminate him on medical reasons. If they wanted to terminate him on medical reasons, they could have done so on January 11th, when he was on medical leave. They didn't do so. Is that a pretext? Is that by translating that legally? Are you arguing that what went on with the complaint to the UN and the misconduct on his part in connection with that, it was pretextual by the... I think it is, Your Honor. Yes. I think one could draw that conclusion. When you look at the results of the OIG, which they took over two years to complete, they had agents come to his house wearing armed pistols, intimidated his wife, they interrogated his family and friends. I think there is a pretext. I don't remember pretext arguments. No, I think you can define that argument by your inference, Your Honor. Okay. You're out of time, Mr. O'Toole. We'll hear from your opposing counsel, Ms. Flannery. Thank you, Your Honor. Thank you. Counsel, may it please the court? Kate Flannery on behalf of the Department of Homeland Security. Your Honors, I want to address briefly a few points that opposing counsel raised. First, regarding the timeliness issue. Appellant has repeatedly, throughout the course of this litigation, alleged that the OIG investigation was pretext or connected to his leave starting in 2011. The documentary evidence in the record shows clearly that the OIG investigation started as a complaint by the United Nations. The United Nations raised this complaint, not to his employer, but to the State Department, who then raised the complaint to USCIS. Then individuals at USCIS consulted with counsel and asked, what should we do about this employee who is out on leave, who is misusing his official position? Then counsel advised Ruth Dorachoff, an employee at USCIS, and said, you should report this to OIG. This is not disability discrimination. This is someone, a report of misuse of his official position and being reported to the OIG. In addition, that's not part of a continuing violation. Mr. Sheba went on leave in January of 2011. He claims that his employers did not accommodate his disability on that date. That is a discrete act. Teague, this court in Teague, said that the failure to accommodate is a discrete act. That triggered the 45 days to report this complaint to the Office of Equal Employment, and he didn't do that. He did nothing for three and a half years, despite consulting with an attorney saying, I have a problem here. I disagree that they're not accommodating me. What should I do? He did nothing. There's no continuing violation. He did not exhaust his and the court should affirm that ruling. I also want to raise, I want to turn to the issue of judicial estoppel. Counsel seems to say that appellant didn't have the opportunity to explain this discrepancy. He had ample opportunity. He could have explained it in his deposition. He could have attached a declaration in support of his motion for summary judgment. He could have asked his doctors to submit documentation, but instead he stood on his statements. And those statements in front of the Department of Labor said, I'm unable to return to duty. I've never been better. I've always been sick. I pressured my physicians into releasing me back to work, and I was never ready to return. The court rightly concluded that he could not reconcile these contradictions, that he could now come back to work. The court, this is judicial estoppel, and it's clear, and he was not able to explain those contradictions. Finally, I just want to briefly discuss the hostile work environment claim. Aside from the fact that some of those allegations were not exhausted, the court correctly concluded that as a whole, looking at the events completely, his termination by a letter was not severe, egregious. The OIG investigation was not egregious, and taken as a whole, he did not raise a genuine issue of material fact. If there are no further questions, we ask that the court affirm the district court's ruling. Thank you. Thank you. Mr. O'Toole, your time has expired, but I'll give you a little extra time in rebuttal. Go ahead. Anything further? Yes, Judge. I'd like to address the issue of hostile work environment. As pointed out in my brief, I don't know what it takes. Does it take a bullet on somebody's desk to create a hostile work environment? Mr. Shiva very clearly points out the intimidation that he experienced. It's on page 18 of my brief, where he goes to point out how Melinda Leach, his first-line supervisor, had destroyed his life. Constantly looking over his shoulder, people entered his house with guns. His wife was terrified, and to give you some perspective, Your Honor, Mr. Shiva and his wife are of Assyrian descent, a religious minority in the Middle East who have been increasingly persecuted throughout the years. And all of a sudden, you've got armed government officials appearing in your house. And then he's told that his previous acquaintances, Armando Lopez, his boss, has threatened to kill him. He quotes him and saying, I will effing kill you, kill your wife and your kids, and bury you in the backyard. I don't know how much intimidation more is necessary. I think that's about as hostile as you can get. So I respectfully disagree with counsel. There is a factual basis there. There's at least a question of material fact that should throw out at least that portion of the summary judgment. So for any questions, Your Honor? All right. Thank you very much. Our thanks to all counsel. We'll take the case under advisement.